May it please the Court, Anne Hester, representing Raymond Surratt. Mr. Surratt seeks savings clause relief from his erroneous mandatory life without parole sentence, and the government agrees that his sentence should be vacated. This Court should hold that savings clause relief is available in the circumstances of this case. First, as I stated, Mr. Surratt is serving an erroneous mandatory minimum life without parole sentence. Second, that sentence is erroneous in light of retroactive circuit precedent that was decided after Surratt's first 2255 motion. And third, at the time of Surratt's sentencing in first 2255, his claim of sentencing error was foreclosed by Harp and Jones. This Court has never addressed in a published opinion whether the savings clause authorizes sentencing relief. N. Reed Jones does not answer this question because the Court there was never presented with the issue of sentencing relief. But the plain language of the savings clause encompasses sentencing claims. It permits a prisoner to seek a writ of habeas corpus, section 2255, is inadequate or ineffective to test the legality of the prisoner's detention. Congress notes- Why does that language cover sentencing claims? I'm sorry, I couldn't hear you. Why does that language cover sentencing claims? Well the reason it covers sentencing claims is because detention is broader than simply a conviction. And Congress knows how to distinguish between innocence claims and sentencing claims. And if Congress- But here you're talking about the sentence, not the conviction. Here you're talking about the sentence, not the conviction. That's right. But Congress has demonstrated in other provisions of 2255 that it knows how to distinguish between a detention claim that's a sentencing claim and a detention claim that is a conviction. If Congress had intended to limit relief to claims challenging a conviction, it would have used the word conviction instead of detention in the savings clause. And Congress made that exact distinction in section 2255H. So under 2255A, where the term sentence is used multiple times, are you saying that in individual can't challenge their conviction under 2255A? No. Well I'll have to look at the statute, I'm not exactly sure to be perfectly honest. Well it says sentence, that's why I was confused about the choice of words, because if Congress used sentence there, and that permits the challenge of a conviction, it seems anomalous to say that the use of the term detention in 2255E would cover the same thing. The sentence and the conviction. Both the sentence and the conviction. Under 2255A? Yes. So why would that apply under 2255E? Because you're challenging his sentence here, not his underlying conviction. Is that right? Right. But under 2255A, it would apply to both the sentence and the conviction. And 2255E does the same thing. But if Congress had wanted to narrow the scope of that, it would have done what it did in 2255H, which is to say conviction instead of detention. So basically the scope of A and E is the same. Conviction plus sentence. That Congress chose not to similarly limit the reach of the savings clause as it did in 2255H is strong evidence that it intended savings clause relief to be available for at least some sentencing challenges. And if any sentencing challenge would be eligible for savings clause relief, erroneously mandating a life without parole sentence should be. For three reasons, an erroneous mandatory life without parole sentence is a fundamental defect that amounts to a miscarriage of justice. First of all, imposing a mandatory life without parole sentence violates due process because it entirely deprives the court of any discretion to consider a lower sentence or to impose a sentence that's sufficient but not greater than necessary to satisfy the 3553A sentencing purposes. Under Hicks v. Oklahoma, erroneously depriving the senator of discretion violates due process and that amounts to a fundamental defect. But also, Surratt is innocent of the offense for which he was sentenced. When the court imposed the mandatory life without parole sentence for the two-time recidivist offense under Section 841, it sentenced Surratt for the wrong offense. He committed the one-time recidivist offense, which is an entirely different offense than the two-time recidivist offense. It's similar to sentencing a defendant for a robbery when he's convicted of larceny. And although the sentencing ranges might overlap, the judge still has no authority. It is, but that raises the Sixth Amendment issue. But there are other concerns besides the Sixth Amendment concern when a judge sentences somebody for an offense that they haven't been convicted of. And in Karachuri, the Supreme Court made clear that even if a Sixth Amendment issue is not in play, the judge still has to find evidence that the prior conviction applies. So, aside from the Sixth Amendment issue, there are other concerns such as the separation of powers, and also there's a due process concern when someone's convicted of an offense without evidence to support it, without any evidence to support it. Finally, the life without parole sentence is unlike any other sentence short of the death penalty, and erroneously imposing it raises special fairness concerns. Determining what qualifies as a miscarriage of justice requires a balancing of interests. And that recently came up in this court in the Jones case in 2014, which I believe, Your Honor, Judge Agee wrote that opinion. But the interests that have to be balanced are the individual's interest in justice versus societal interests in finality, comity, and conservation of judicial resources. And that weighing test can come out differently depending on the context. And the Jones case demonstrated that, because in that case, the court interpreted miscarriage of justice more narrowly in the context of relief from a statutory statute of limitations than it does in the context of procedural default. Well, in this case, the court needs to consider the specific circumstances of a savings clause relief in applying that balancing test. So you would apply it differently here than in Jones, 2014 Jones decision? Yes. Like you'd have to for you to prevail under that argument. Yes. It should come out differently here because the concerns are different. For one thing, a life without parole sentence weighs especially heavily in the balance, as the Supreme Court's recognized. It's the most serious sentence short of death, leaving no possibility of future release. But against that, the court also has to, one of the considerations is the conservation of resources, but the court has to consider that here, erroneously incarcerating Surratt is going to result in probably another 40 years in prison and at a cost of possibly over a million dollars. That's far more than it would cost to resentence him. The court also should consider that comedy is not an issue at all in this context because the savings clause only applies to federal prisoners. So there's no interest in the finality of state judgments that needs to be respected. And finally, finality concerns are diminished here where the requirement that controlling precedent being overturned means that relief would not extend to a large number of prisoners and all that relief would entail is a resentencing where presentation of evidence would be minimal. Surratt presents the type of exceptional sentencing error that amounts to a miscarriage of justice and requires habeas relief. Are you saying that in order to establish cognizability or access to the savings clause? Access to the savings clause, but I think that the miscarriage of justice determination is probably the same for cognizability and accessibility to the savings clause. Let me ask you a question. This for me is a very, very difficult case. And I want to ask you just two questions. Okay. And these questions pertain to cognizability. Okay. Can you point me to a case in any circuit that has held that a sentencing claim is cognizable under Section 2255 even as an initial matter because a statutory minimum sentence had been increased as a result of predicate offenses that were subsequently declared not to legally qualify as predicate offenses? I can't and I don't think that any court has had to address this issue yet, Your Honor, because most of the previous cases have come up in the context of Begay, the crime of violence, and that didn't implicate this particular statutory sentencing scheme of the drug statute increasing mandatory minimum. So I think it just hasn't come up because it's so rare for the savings clause to be implicated, for one thing, because it's rare to overturn circuit precedent. But there's really just been two previous waves of cases. The first one was Bailey, which only addressed guilt of the offense, and the second one was Begay, which just addressed crime of violence. And I suspect that's the reason why it has not come up before. So you get to be the first. Okay. I have one more question, and this also deals with cognizability. Do you take the position that this sentence that was given was illegal? Yes. And the reason for that, it goes back to the long line of cases that a recidivist offense is a completely different offense from a nonrecidivist offense, which the court reaffirmed in Simmons – that goes back to the line of cases beginning in the 40s in the Supreme Court, I believe, but reconfirmed in Carachuri and Rodriguez. But what Elaine added to that was the reversal of the Harris case, which held that the statutory maximum was what the penalty is. But what Elaine makes clear is that it's both the minimum and the maximum that establish the penalty. So it's illegal to sentence someone to the wrong minimum and maximum, not just the wrong maximum under Elaine. All right. Is there any case law that would support that position? No. Not even Bryant v. Warden from the 11th Circuit did not consider Elaine. It was too new. Well, I'm feeling better about how hard I thought this case was. Yes. Okay. Thank you. Thank you. Ms. Maley, did I say that right? Yes. May it please the Court, Erica Maley, representing the National Association of Criminal Defense Lawyers, and Professor Douglas Berman, amici for the defendant. The District Court's interpretation of 2255E should be rejected because it raises serious issues under the Due Process Clause, the Separation of Powers, and the Suspension Clause. The Doctrine of Constitutional Avoidance counsels courts to reject such interpretations when other interpretations of statutes are possible. In addition, a number of courts have recognized that one of Congress' purposes in enacting 2255E was to avoid just such serious constitutional questions as to the validity of 2255 as a whole. First, the District Court's interpretation of 2255E raises serious questions under the Due Process Clause. The Supreme Court held in Hicks v. Oklahoma that the refusal to correct an error that stripped the sentencer of all discretion in setting the sentence is a due process violation. There was just such an error here. The District Court— Was Hicks declared retroactive by the Supreme Court? I'm not aware of decisions addressing whether Hicks was retroactive. However, I'd just like to clarify, we're not here raising a separate Hicks claim as a grounds for correcting Mr. Sherratt's sentence. What we're saying is that if you accept the District Court's interpretation of the sentencing clause, that would itself raise a serious due process problem under Hicks. Okay. And that's because the District Court here imposed the sentence of life without parole under the erroneous belief that that was the minimum sentence allowed for Mr. Sherratt's offense under the statute. But in fact, under this Court's decision in Simmons, the mandatory minimum sentence for his offense was only 20 years. Indeed, the District Court said on several occasions that it would not have imposed a and that it believed the sentence to be unjust when all of the usual sentencing factors were considered. The error is particularly severe here, as Ms. Hester pointed out, because the sentence imposed was life without parole, which is the most serious deprivation of liberty that a court can impose short of the death penalty. And furthermore, Mr. Sherratt had no earlier avenue of relief from this error because at the time the sentence was imposed, at the time of his first appeal, and at the time of his 2255 motion, binding precedent from this Court foreclosed the argument that his sentence was erroneous. Why couldn't he have made the same argument that Mr. Simmons made? He could have raised the argument, Your Honor. And again, I'd like to clarify in this case that this is a separate standard from the cause and prejudice standard. In the context of cause and prejudice, courts have said the futility of an argument is not cause for failure to raise it. But here, the standard is, was the remedy adequate and effective? And the remedy is not adequate and effective, I would submit, if the argument was foreclosed by binding precedent, because if he had raised the argument at the time, he could not have obtained relief on it. And so that makes it into a separate issue. Second, the District Court's interpretation of 2255E raises serious separation of powers concerns. The Supreme Court has held that the separation of powers gives individuals a right to be deprived of their liberty only to the extent authorized by Congress. And as Ms. Hester was addressing, both mandatory statutory minimums as well as statutory maximums implicate that right because a change in the statutory minimum changes the penalty that was imposed. And this case is an excellent example of that, again, because the District Court explicitly said, I would not have imposed this sentence but for the belief that it is the mandatory statutory minimum. Indeed, often mandatory minimums may have a more severe effect on the sentence because it's very common for judges to sentence defendants at or near a mandatory statutory minimum. Third, the District Court's interpretation of 2255E raises serious questions under the suspension clause. The exact scope of the suspension clause has never been settled, but courts have suggested that it protects at least the core of habeas corpus and that the core can include some sentencing errors as well as errors affecting convictions. This, again, is a particularly serious sentencing error given the severity of the sentence imposed and the likely difference in the sentence that Mr. Surratt would have received but for the error. For all these reasons, the judgment below should be reversed and the case should be remanded for Mr. Surratt to be resentenced under 2241. Thank you. All right. Thank you, Ms. Bailey. Mr. Carpenter, are you going to throw in on this? No. Okay. Ms. Ray. May it please the Court. The government agrees with Mr. Surratt in this case that the District Court erred in denying him relief under the savings clause. Your Honors, the three requirements that this Court articulated in Rice and that other courts of appeals have articulated for savings clause relief can be distilled into sort of procedural requirements on the one hand and substantive requirements on the other. With respect to the procedural requirement, it is that the petitioner did not have a reasonable opportunity to challenge or to present the claim that he is now presenting because circuit law or Supreme Court law foreclosed that argument. In this case, Simmons was the case that radically changed, as this Court is well aware, how this Court interpreted what a felony offense is for purposes of federal sentencing law as well as for purposes of 922G1. All right. In that connection, let me ask you the question. This question has to do with the savings clause. Can you point me to any case from any circuit that has held that the savings clause allows a cognizable claim to be brought based on intervening circuit court precedent that the circuit court applies retroactively on collateral review? I'm not talking about Supreme Court precedent applied retroactively, but are you aware of any case like the one I described in my question? And I'll repeat the question if you want me to. No, I understand the question. We've wrestled with that question as well. I don't think so. I want to say that there might be a Ninth Circuit decision, but not that I can think of. The case law thus far has relied on Supreme Court decisions, but that doesn't mean that the savings clause wouldn't apply and rationally it should apply where the effect for purposes of what the kind of claim a prisoner could have presented was foreclosed. And so the procedural requirements in this court, this case unquestionably presents this court with a few questions of first impression. That's a clear statement. So there are going to be answers where I'll say no, there's not. But the rationale that's used for purposes of what constitutes a fundamental error and procedurally what is required applies under these circumstances. Under your interpretation, would a first-time 2255 filer be allowed to assert this claim, albeit untimely? Would a first-time filer be allowed to use a savings clause to assert this claim? No, because if it was a first-time filer, he would have to go under the regular 2255A requirements. But part of my question was it's untimely. It's too late. It is untimely. The government Can he use it? Are you saying he can use the savings clause to evade the statute of limitations? No, Your Honor. The savings clause applies where 2255 is inadequate or ineffective. Now, 2255 is not inadequate or ineffective just because someone is too late. We're going to not let a first-time filer take advantage of the savings clause, but we're going to let somebody who's already filed take advantage of it. The savings clause by definition applies when 2255 is inadequate. And so if someone is on the initial filing, 2255 is not inadequate. The statute of limitations applies just as it does to every other case. However, the savings clause does apply, and the Bailey cases are good examples of cases where folks would have been precluded from the statute of limitations if they had filed it as an initial matter, but they were allowed to come under the savings clause because of the nature of the defect, because of the nature of the error. And the government in these cases That involved Supreme Court precedent. It did. And it involved actual innocence of the underlying offense. It did, Your Honor. And so this case is different in those two regards, but it is not different in terms of the nature of the error. So the nature of the error was actual innocence in Bailey, yes, but it was a separation of powers issue. That was why the actual innocence claims are a problem, because only Congress can prescribe conduct and say this is what's illegal. Similarly here, only Congress can define the limits of punishment. So the fundamental defect has to be the same in kind that the courts have recognized with respect to the Bailey kind of actual innocence claims, but that doesn't mean they have to be the same. They have to be similar in kind. And in this case, it is similar in kind because the same separation of powers problems that were implicated in the Bailey claims are present here. Now you understand, I think as maybe as Judge Agee pointed out, I'm not talking about situations where the Supreme Court has changed the law or made it right. I'm talking about where circuit court, where we've changed our own law. That's right. You would have a say to the person who's never filed. You can't take advantage of the savings clause. But the person who has filed a first claim can. Am I understanding that correctly? Yes. Or am I just confusing both of us? No. I mean, I think Your Honor is not confusing anything. I think that the first time filer is going to be subject to the statute of limitations, yes. And that doesn't render it inadequate or ineffective. The government, however, can waive that defense, which it has in all cases like this. But the government's not been consistent, I don't think, in this. Maybe there's some reason to it that I'm not privy to. Let's presume there's no waiver. If there were no waiver, then the statute of limitations, if the defendant did not come in within a year, would bar the claim. That's right. That's Whiteside. That's Whiteside. That's Whiteside. So the statute of limitations would bar the claim if there's no waiver on the part of the government. But the question of whether or not the savings clause applies, and the savings clause necessarily applies to those claims that are barred, but not simply because they're futile. So the futility part of it goes to the procedural requirement. Is it a claim that could have been brought before? No. Then the procedural part of savings clause relief is satisfied. That's the first and third requirements under Jones and Rice v. Rivera that this court is out. If you look at them, they really go to the procedural part. The second requirement goes to the substantive claim. And that is a claim that is so fundamental that in the cases, the actual innocence cases, which are the only ones so far that have been recognized, they implicate separation of powers and they implicate fundamental due process. These sentencing claims, while novel in the sense that no court has recognized the application, the mandatory minimum, present the exact same legal problems, the exact same fundamental error, which is the error of punishing someone, detaining him based on a fact or prior conviction that was not legally adequate to support the range of punishment that Congress insisted on. So Congress says, if you have two prior felony convictions for serious drug offenses, you have to, the sentencing court has no choice but to sentence the defendant under these circumstances to mandatory life in prison. It would be the same, however, if it were the mandatory minimum that applied in that case but was illegally applied was 240. It would be the same under the government's, the government's position is it's the same legal error. So in that case, the defendant was not legally eligible for that mandatory minimum punishment. That is both a due process error and it is a violation of separation of powers in exactly the same way that convicting someone of conduct that could not, was not criminal as we now understand it under the statute, is a violation of separation of powers and due process. If the defendant in this case, could he have gotten a sentence below the mandatory minimum if there were a substantial assistance motion? If the government exercised its discretion to file that motion, yes. So if that had occurred here and he would have otherwise been subject to the mandatory minimum of life but he got a substantial assistance reduction, if that were the case that we had here, would he still be able to come in and ask for relief under the savings clause? Your Honor, the government's position is yes because the discretion on the part of the sentencing judge is limited only to the factor of substantial assistance. His hands are still bound. Fortunately, I think that is a closer case than this one. This one, there was no discretion, absolutely no discretion, and therefore it is on all fours with Hicks. Where there's a substantial assistance reduction, there's some questions of Teague and new rule and all the rest of it. But as a matter of fundamental defect, the government agrees that that's an error. That would. But it is in the nature of what violates separation of powers and what is a fundamental due process error and it is the same kind of error that this court has recognized and that other courts have. And I would note that the 11th Circuit's decision in Bryant where the court recognized that the sentencing claim is cognizable under the savings clause, in that case it was the application of the armed career criminal enhancement, so it yielded a sentence that was above the statutory maximum without that enhancement. But the department in this case waited for a lane. We really were looking at these cases and kind of wringing our hands a little bit, but with a lane on the docket, we waited until that decision came out to see how the Supreme Court articulated the error of sentencing someone based on a mandatory minimum where there was some, in that case it was a procedural error, but in our case it's a substantive error. And the Supreme Court's language in a lane that tells us that the imposition of a mandatory minimum is tantamount to an aggravated form of the same offense was sort of what tipped the scales for us to saying, yes, these are cognizable under Supreme Court precedent that tells us how serious and how fundamental the mandatory minimum error is, not just the statutory maximum, but the mandatory minimum. And in a lane, the Supreme Court essentially equates those two things. They both are mandatory. And the error in either one can render the error fundamental. So from that, we go to the substantive requirement, and in this case it's a substantive error, not just a procedural error as in Almendez-Torres or in a lane. It's a substantive sentencing discretion that was restricted completely and violated separation of powers. Let me ask you a question. One of the things that concerns me about this is that in 2255H, Congress set out two specific situations where a second or successive petition could be filed. The concern I've got is that by allowing a prisoner to go through the Savings Clause and utilize the Savings Clause, we're expanding the basis upon which a prisoner can seek relief through a second or successive petition. And so the concern I've got is that what we're being asked to do is something that exceeds the authority that Congress gave us by their putting in 2255H. I appreciate that concern, but 2255E has always been that safety valve. So 2255E necessarily provides relief for claims that are foreclosed by 2255H. What do we need 2255H for if 2255E can be used to basically assert the same thing and more? Except that's it. The question is, and this goes back to the Bailey line of cases, right? When in response to Bailey, the Circuit Courts of Appeals said, wow, what do we do? Surely we can't be limited to 2255H because that's a statutory error and 2255H doesn't encompass that error. And so this narrow, the Savings Clause had existed from the beginning and it made sense to think about what errors are so fundamental that while Congress carved out second or successive for these limited class of errors, what claims are so fundamental that they have to be redressed? There has to be, surely it's where there's conduct that turns out not to have been criminal, but this person has been convicted of that conduct. So that move toward, after the AEDPA was enacted, toward recognizing that there are some claims so fundamental that even 2255H doesn't bar them, happened in response to Bailey. So the challenge now is, what was that, how do we characterize those errors? They've been recognized for years. And we know that 922G1 with respect to Simmons is one of those errors. So how do we, what do we look at? Well, we look at the nature of the error itself and it is where it is a separation of powers issue and where it is a fundamental due process. So, Your Honor, I understand that the Savings Clause in some respects, but remember that the Savings Clause is part of 2255 also. So 2255 itself recognizes that that statute might be inadequate or ineffective to test the legality of detention. And if that is true, then 2255H does not bar that claim. Do you think our case of Jones opened the door for that theory? Well, it did along with all of the other circuit court decisions in response to Bailey. That was, those were the first cases that I'm aware of that applied the Savings Clause after 1996 when AEDPA was enacted. Amicus Georgetown says in its brief that the Solicitor General has argued in a case before the Supreme Court called Williams v. Hastings that the Savings Clause claims are only cognizable when the error is retroactively made applicable by the Supreme Court. Is that correct? Well, it's correct that that was the way it was articulated in that case, but that was only because it was, it didn't present the exact question of should it be available to circuit court decisions. They did articulate it similar to Jones, how Jones articulates it as a problem with a conviction, but this question wasn't before Jones. I will represent, to your honor, Judge Agee, and to the court, that this position of the government is that a circuit court decision, at least where the government's not challenging the validity of that decision, that overturns binding circuit court precedent, that that is the kind of decision that qualifies. If a person was not able to bring a claim because it was foreclosed by binding circuit court precedent or by the Supreme Court, the government's position is that the circuit court decision can be enough, and it is enough as long as it's one of those where it flips everything on its head. If we had one law, Harp, Jones, it says one thing, then we have Simmons, it says something else. The government does not challenge the validity of Simmons. We didn't seek cert in Simmons. In that case, at a minimum, the circuit court decision has the same effect for purposes of whether or not the error can be redressed by that petitioner. Your caveat there seems to put the decision in that circumstance in the hands of the executive branch instead of the judicial branch. I don't know how much of a caveat it is. It's essentially, look, if this litigation is over, if that circuit court decision is valid and in place and there's no further review that's going on, then that is a decision that can be used. So it's less about, I mean, it's only the prerogative of the executive to the extent that we choose to file cert or not, and it would only last as long as that cert petition was valid. But in any event, in this case, the government agrees with the defendant that Simmons is that kind of sort of precedent-busting decision that changed whether or not a defendant could get relief for a fundamental error, and it renders the decision, the fundamental error, procedurally acceptable under the Savings Clause. Does this set up the circumstance where, let's say, that the Simmons decision came in another circuit? There was a case before that, I think in the Sixth Circuit. There was, right. Yeah, Pruitt. But the circuit had gone a different way here, and the inmate was then transferred to a federal facility in the Sixth Circuit. He could get relief here, but he then brings a claim under the Savings Clause in another circuit. Did he get relief there even though it had been denied here? It seems like the, I'm just trying to remember, it seems like the Seventh Circuit had a similar situation. But I guess the answer to your question is I don't think that the prisoner would get relief in the new jurisdiction. I think that what is required is a circuit court opinion without, that changes the legitimacy of his conviction that he obtained in that circuit. I recognize that this court has to think about how this is going to apply to everyone, but there is no decision that differs from Simmons. There's no circuit split. The only three circuits that have considered the issue have all... But what if there were, though? I mean, those are the questions that we have to ask. If Simmons had gone the other way, but you still had Pruitt in the other circuit, and moved from one institution to the other, what happens? I think that if the, and I see that my time is up, if I may try to finish answering Your Honor's question, because it's a tough one. The answer is that if it were not cognizable in the circuit of conviction, I don't think it would be cognizable in the circuit of confinement. Because the petitioner, and at the same time, if it is cognizable in the circuit of conviction, it would be in the circuit of confinement. Wouldn't the answer be you still have to meet the strictures of 2241? Absolutely. Absolutely, you still couldn't dodge, you couldn't circuit hop to get around that. You still have to come through that gatekeeping aspect of it. Right, and these are, this is a very narrow gate, and I want to emphasize that. And the government has no interest in having that gate being, you know, where it needs to be. We just looked at as an honest review of what kind of error has been recognized before, that this error is on all fours with that error. If Your Honors have no further questions, thank you. Thank you, Ms. Wright. Mr. Doblot? May it please the Court, I was appointed to defend the judgment below, and that is what I will do. Let me start on a general level. I think the situation is more extreme than the other parties, my colleagues are presenting it. I would say comfortably there is not another court of appeals in the country that would allow Mr. Surratt to proceed under 2241 for one of the following three reasons. One, there's no Supreme Court precedent, and you need Supreme Court precedent holding the right retroactive before you can get in in the first place. Number two. Under the Savings Clause? I'm sorry? Under the Savings Clause, you say that's required? I think it is required because it was a kind of. You don't get that from the text of what Congress wrote, do you? I think you do get it from the text because if you look, in other words, the gateway under 2255H is both that it's retroactive and decided by the Supreme Court of the United States. If all that means is you can't do it under 2255H, you just go over to 2255E, then the Savings Clause becomes a catch-all. Why would Congress want to say you have to wait if it's a constitutional claim until the Supreme Court holds it retroactive, but you don't have to do that if it's a statutory claim? You can come in before that happens. That doesn't make any sense. It does make sense in the sense that E deals with when it's fundamental, it's the nature of it. H deals with it could be any reason that the Supreme Court may have changed and made it retroactive, but E deals with the nature of fundamentals of what's statutory or otherwise. I don't believe you can read E as just fundamental because that's the same standard that you apply on a first petition. Fundamental is first petition type language. 2255E, when read in conjunction with 2255H, as explained in Jones, requires a three-part test. One, you have to show actual innocence of the crime. That is one of the highest conceivable standards. It's not fundamental error. In addition to showing error, you have to show, oh, by the way, I'm also actually innocent. Jones didn't deal with the sentencing. So you overstate Jones and say it precludes sentencing. But that wasn't before the court in Jones. Do you agree with that? No, I do not agree with that. Was sentencing before the court in Jones? The sentence was not before the court. It was a Bailey claim in Jones. Exactly. But they had a Supreme Court decision that was held retroactive in Bowsley. And you'll recall that in Ray Vial, this court en banc refused to let someone bring a Bailey claim because it had not been yet held retroactive by the Supreme Court and it was not a constitutional claim. So I don't think that gets them anywhere. In other words, we're not talking about a court that Congress has given the authority to decide what is fair. It has set up fairly strict rules. It has made them jurisdictional. Under 2255E, the petition shall not be entertained unless 2255 is ineffective or inadequate. That does not mean unavailable, which brings me to an issue that has not been discussed by anybody yet, and that's the original terms of the guilty plea here. Unavailable is inadequate on steroids. I think the case law is pretty clear, Judge Gray. I know what you're describing, but unavailable means that if it's not available to him, that does not necessarily mean that it's inadequate. So if he has to wait until Bowsley comes along before he can raise a Bailey claim, he has to wait. It's unavailable to him. That does not make it inadequate. Otherwise, anyone can come in any time, H applies, and say, well, I have fundamental error here, therefore I can come in under 2255E. It can't mean that. It's not just anyone. We're talking about a case where the court was stripped of all of its ability to sentence an individualized sentence, and we know here because the court said it was unjust. That's the words of the sentencing judge. Judge Berry, that is correct. It is the same judge that denied habeas relief here because the court felt that it did not have jurisdiction. That is the point I think that is here. You don't have jurisdiction to rectify this error, and Congress has the absolute right to do that. That's Felker v. Turpin, and we're not talking about court exercising its equitable powers here. Congress has taken it away. This is not an appropriate case for a second or successor petition or 2245E. You read it that narrowly, then. You force, then, not to be able to use constitutional avoidance, and you run straight up with the suspension clause. The interesting thing, though, I think Enrique Vial rejects the suspension clause argument. That's Felker v. Turpin, rejected in the Supreme Court. The irony here is you don't have any constitutional arguments. Everybody's talking constitutional avoidance. No one's made an argument that his constitutional rights would be violated if you denied him relief here. Did he have a right to be sentenced by the court? Yes, he had a right to be sentenced by the court. Judge Berry, look, as far as I'm concerned, if you had five prior convictions, a life sentence without parole is unfair, but feeling that way about it, it's Congress's authority to do that, and it's authority under 2255 to cut off relief so that you can't get to the merits and you can't even make the decision as to whether this is fair or not, has been recognized, and it's well established. It's not about that. The Constitution, the framers, it's interesting. We're in the 800th anniversary of Magna Carta. You're saying that Congress can just ignore the Constitution and say courts? No. We are going to say that you have to sentence him this way, and you have no control of it. That really makes it another crime. I mean, to say a statutory, mandatory life without parole. With the way this statute is set up, it is not a separate crime. That has been considered and rejected by the courts that have had occasion to deal with it. In many ways, many of the equitable arguments as to why this sentence is unfair because of Simmons were rejected in Whiteside. In other words, this is not a simple question of what's fair or unfair. This question was not reached in Whiteside. No, but if Whiteside was going to be precluded from raising the claim there, we are now under a provision that has substantially reduced any right of a court to take jurisdiction to consider it under a second or successor petition, much less under 2241. He doesn't have actual innocence of the crime. He does not have a Supreme Court decision. And you have a guilty plea in which he waived the right to challenge the sentence on appeal or under 2255. And that, in and of itself, which was a separate issue that he addressed in Whiteside, wholly apart, it was rejected because the terms of the plea were not clear. Here, the terms of the plea agreement are very clear. And as Amicus has indicated, I believe, when you're talking about procedural default, the fact that the law was not clear at the time isn't going to save him. And Harp had not even been decided when he pled guilty. He came into court and pled guilty, was released the same day, so that he could establish cooperation. And he waived the right. Has waiver been raised here? It sure is by me. And it's not waivable. In other words, the government waives that. They waive the requirement of the Supreme Court decision. And as Judge Agee correctly pointed out, was it an executive prerogative or is it a judicial prerogative? My answer is neither. It's a congressional prerogative. And Congress had said, no, you can't raise this. But, yes, we are very much raising the guilty plea waiver itself as foreclosing any relief here before you ever get to Jones. And the problem with the government's waiver of the waiver, which they did here and which the court said they can do on direct appeal or on a first 2255, is this is jurisdictional. You can't entertain this if he waived the right to review under 2255, and he did. And nobody's disputing the voluntariness or the intelligence of that waiver. That's been upheld on appeal as far as the voluntariness of the plea. My point, and unless there are other questions, I'm going to end it here. You don't have jurisdiction here, and I mean it respectfully. I'm defending the judgment because I think there are terribly important jurisdictional issues here that are not being addressed by anybody else, and the government cannot waive jurisdiction. And it's doing it in two different contexts here. It's attempting to waive the guilty plea waiver. It's attempting to waive the Supreme Court requirement, and that results in a system that you have here where you've got 30 people, according to the addendum filed by Mr. Surratt, who have been released already on post-conviction review at the district court level based on decisions that have been reached where I would submit there was no jurisdiction if they were, in fact, successor petitions. You can't tell from the 30 whether they're first petitions or second, but given Whiteside and given what I think has to be the ruling here, several of those cases are going to be cases where there was no jurisdiction in the first place. And that's one thing that requiring a Supreme Court decision that says that you cannot touch this issue until that decision says it's retroactive prevents that from happening. So you get a consistent application across the country, and you don't have that here. You're going to have some people. If I prove correct here, it means some people got their sentences reduced when there was no jurisdiction to do it. But you would acknowledge that an E doesn't require that. I would acknowledge that if E applied, if 2255 was inadequate or ineffective, then 2241 could be used. It is not inadequate or ineffective here, and that's clear. You can't go to any circuit. The Seventh Circuit wouldn't touch. That's the one that says you can cover sentencing issues. Wouldn't touch this because it's not a Supreme Court decision. The Eleventh Circuit says you can deal with sentencing issues, only if it exceeds the maximum sentence. This doesn't exceed the maximum. Maximum for his base crime was life sentence. That's what he received. And by saying all this, what I'm saying is Congress has stripped you of jurisdiction to deal with this. Does that mean that the government can't use its commutation power if it thinks that's what's appropriate? Of course it can. Does that mean Congress, as it has done a little bit in the crack-cocaine-powder-cocaine ratio, has sort of relented its sentencing disparities? It can make a change here in grant relief. But Congress has very clearly cut off successor petition review and 2241 review from the courts, and that's the end of the discussion. There's no constitutional issue about that. And I'm saying that just by reading the statute. You don't have the basic core ingredients. And to have a court of appeals... You say it emphatically, but your saying it emphatically doesn't make it crystal clear. There's no requirement, because you read inadequate, to be in line solely with H. And you're not recognizing that E has any aspect in play when it is a fundamental error. You read it the same. As far as it is H, it's got to be a Supreme Court case, retroactive. There's got to be an E. That's your read to it, but that is not emphatically clear in terms of the statute. Well, let me answer it two ways. One, if you agree with me on the guilty plea and the waiver of the right to appeal and 2255 review, you don't even get to 2255 E and H and how you compare them. If I read Jones narrowly like you saying it precludes... No, I'm saying the guilty plea waiver. In terms of the guilty plea, he gave up his right. Under Copeland, if he waives his right to challenge that, that's over. In Copeland, Simmons came down and said you can't raise it because you waived your right to do that. So that's going to cut it off without even getting to the relationship between 2255 H and 2255 E. If you put that aside or you say that the government can waive the waiver and you get to 2255 E... How does that read in terms of Alain? Is that in line with what seems to be the trend of the Supreme Court in terms of some of those guilty pleas? Well, two things to answer there. Are they not? For the reasons that we stated in our brief, we don't think Alain, which doesn't deal with this type of enhancement, it takes it off the table and says this opinion has nothing to do with sentencing enhancement based on prior convictions. So I find it pretty hard to get past Almandarez-Torres and the express disclaimer in Alain to suddenly use it when Congress had said you need an express statement from the Supreme Court that there is a right that is being applied retroactively before you even get into court. Alain doesn't do that and although the Supreme Court hasn't weighed in yet, every court to weigh in so far has said Alain is not retroactive. So I find this all a little bit puzzling as to... What they're trying to do is they're trying to turn 2255 into a catch-all. Now, it's a catch-all when the government waives whatever it wants to waive from the defense. It's just a catch-all. It's not that. 2255H narrows the right to a second or successor provision. What is E then in your read? I think you've got your perfect example. The perfect storm is Bailey-Bowsley where you have a statutory right which is unavailable. It's not constitutional. You can't raise it, but you are actually innocent. You did not commit the crime for which you were convicted. That is the situation where you can come in under 2255E if you meet the Jones test. You have to show actual innocence. You have to show that there was a Supreme Court decision  That would be Vial. And that at the time you had no available way of raising the issue. But this is not a guideline sentencing error like Whiteside. Do you agree with that? I agree that it's not a guideline sentencing hearing, but in Pettiford the court said that there's no difference between guideline sentencing and statutory enhancements. So I don't think that that gets you out from under it. I think that's a distinction without a difference in this context. Again, I think that Congress has blocked your jurisdiction here. And I mean that respectfully. No, you have to be respectful because that's just your argument because it doesn't play you in terms of what Congress wrote. You're just arguing just like any other lawyer. Well, no, I think several courts do that. Nothing Esten's done about anything you said. It's just an argument. That's all. It's an argument, and several courts have agreed with that argument. And as near as I can tell so far, the one court has disagreed that 2255E is jurisdictional. This court in Rice v. Rivera said it is jurisdictional. And so that's binding on this panel, and if there's no jurisdiction, you don't get to the question of what's fair or not fair. It doesn't apply here. It doesn't mean that something unfair didn't happen. That's the same as the dissents in Whiteside. That's not the point. As I said, I will readily agree that at some level you have fairness issues, but this is not a catch-all for anything that is unfair or fundamentally unfair. Miscarriage of justice means actual innocence of the crime of conviction. And that's clear from Bousley. It's not an abstract miscarriage of justice that can be expanded to whatever you want to discuss. It doesn't work that way. And that's the sad fact of this case. That's what cuts off review. And it's on several different levels. It's under all three prongs of Jones, but also you've got to deal with this guilty plea and an express waiver of the right to challenge it. It seems to me odd indeed that you can expressly waive your right to appeal and further review and get in under the savings clause when you had no right to raise the issue in the first time around on direct appeal or first review, but you can now. That, to me, makes no sense at all, unless there are further questions. I think that... Bear with me for one second. No, that's it. Go ahead. Thank you. Okay, thank you. Ms. Hester? I'll start with the appeal waiver issue, since that's where Mr. Goldblatt ended. The problem with the government's argument is that the appeal waiver is part of a contractual plea agreement and, excuse me, amicus' argument, and their argument relies on speculation that the government would have asserted the waiver if Surratt had raised the claim, and there's just no way of knowing that because he didn't raise the claim. But also, Surratt would never have waived his right to appeal if the Jones decision had not been in place when he entered into his plea agreement. But at the time he entered into that plea agreement, his argument was already foreclosed by this Court's precedent. Well, under Blick and a lot of other decisions, isn't it just basically a risk that the defendant takes when they make a plea agreement that the law will change thereafter? That is a risk, but we're not talking about whether he can avoid the plea agreement if the government does assert it. What we're talking about is speculation that the government would assert it when that situation never arose. So really what barred his claim here was the Jones and the Hart set of decisions and not his appeal waiver. We just don't have any way of knowing what the government would have done if he had asserted that claim earlier. And a lot of times the district court doesn't even ask the government for a response if the claim is facially frivolous. You know, it's entirely possible that the court just would have denied it without the government ever having to file an answer and assert the appeal waiver. As far as Supreme Court precedent being required for savings clause relief, there's four reasons why it should not be required in this case. First of all, Jones didn't require it even though the court relied on the Seventh Circuit's decision in Davenport, and it must have been aware of that court's requirement of a Supreme Court precedent. But furthermore, none of the three decisions imposing this requirement explain why it's necessary. And third, Bryant v. Warden, which is the case out of the Eleventh Circuit, states that a Supreme Court precedent is required, but it doesn't actually impose that requirement because that case relies on circuit-busting circuit precedent because the court held that Begay itself did not overturn the prior circuit precedent. It was actually circuit precedent that overturned the prior circuit precedent. So Bryant v. Warden actually assists Mr. Surratt here in terms of that particular requirement because it said it imposed it, but it didn't really impose it. Finally, the fact that the Supreme Court decision is required under H-2 for a successive petition doesn't mean the savings clause requires it. Henry Jones covered that ground, and it said that H-2 and E are not meant to be coextensive. H-2, the successive clause, doesn't require that the remedy have been ineffective or unavailable previously, but it sets out some particular substantive errors that it thinks deserve successive review. But in the case of subsection E, the savings clause, the focus is on the unavailability of relief previously. And the remedy previously was ineffective whether the circuit-busting precedent is circuit or Supreme Court precedent. So really, under the savings clause, who busted the precedent shouldn't make any difference. The harm is the same either way. I'd like to go back and address a couple of questions that the court had previously that I wasn't available up here to answer. Judge Traxler, you asked if Hicks is retroactive, and the answer to that question in this case is that Hicks doesn't need to be retroactive because it was decided before Surratt was convicted. And as the government said, this case is on all fours with Hicks, so Hicks applies to this case, retroactivity aside. And as far as the court's question about whether any court has ever granted savings clause relief for a mandatory minimum sentence, it hasn't, but the Seventh Circuit did apply cognizability to mandatory career offenders. So in some ways, the court can compare those two things. They're different, but they can be compared. And in fact, this kind of error is a much more serious error than the error that the Seventh Circuit relieved in Narvaez and in Brown v. Carraway. And Judge Traxler, you also asked whether a first-time filer in this situation can use the savings clause to avoid the statute of limitations. And I'm not so sure what the answer to that question is. I think that it's possible that that person could get relief because it may be possible to prove unavailability because the circuit-busting precedent was unavailable at him during the limitations period. So I've been thinking about that issue a lot, and I'm not sure that the answer to that is altogether clear. Okay. Thank you. Okay, thank you. Mr. Goldblatt, I want to thank you for representing the district judge in this case. I know you're co-appointed. We appreciate very much your taking on all this extra work, and I want to thank you. I will come down and greet counsel, then take about a five- or ten-minute break. We'll come later. This honorable court will take a brief recess.
judges: William B. Traxler, Jr., Roger L. Gregory, G. Steven Agee